## Case No. 9,215.

### The MARY JANE.

[1 Blatchf. & H. 390.][1]

District Court, S. D. New York. Sept. 24, 1833.

PLEADING IN ADMIRALTY—SWORN ANSWER—REPLICATION—PRACTICE IN ENGLISH ADMIRALTY.

1. In admiralty practice, in the absence of any specific rule regulating the proceeding, a replication is necessary to put in issue the facts set up by a sworn answer.

2. If no replication is filed, the libellant will be taken to have admitted the truth of the answer.

[Cited in Thomas v. Gray, Case No. 13,898.]

---

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

3. The method of procedure in the English admiralty, in matters of practice, and its origin and forms, considered.

4. New rule promulgated in regard to replications.

This cause was noticed for hearing and proofs. The claimants contended that, no replication having been filed to their sworn claim and answer, the libellants must be deemed to have admitted the facts set up by the answer, and that the claimants were not obliged to support it by proofs. The libellants contended that the issue was complete on the filing of the answer, unless, under peculiar circumstances, a special replication was demanded. Upon an examination of the files by the clerk, under the direction of the court, it was ascertained and reported that the general course of practice had been to file a replication, when proofs were to be taken in the cause. And such was the established practice in the old New-York colonial court of admiralty. See the Minutes, A. D. 1727, 1751, 1753, 1758.

Edwin Burr and Erastus C. Benedict, for libellants.

William S. Sears, for claimants.

BETTS, District Judge. This point of practice is not regulated by the standing rules of this court, and, accordingly, it must be governed by the principles and practice prevailing in courts of admiralty, or under the civil law, which is the common source of procedure to the forums both of this country and of England. The course of procedure in the English admiralty, which is the immediate source of our practice, is in conformity to the practice of the courts of the canon law, being administered substantially in the methods and with the formulae of the Roman law. Browne, in his treatise on Civil and Admiralty Law, adopts that principle as the basis of his work. Clerke, who is regarded as a standard authority, is the earliest authentic writer on the subject. He compiled, in Latin, a praxis for each tribunal, making that of the ecclesiastical courts the authoritative one, and refers throughout, in the other, for the rules of proceeding in admiralty, to the usages and practice of the ecclesiastical courts. No other treatises on the admiralty practice are recognized in the English court as authority. And, indeed, it may be said, that the admiralty in England appears to be governed by no determinate system of practice, but to conduct its business conformably to what is there understood to be the usage and custom of the court, evidenced by its files and archives, or by the report of the registrar.

Two modes of procedure prevail in the ecclesiastical courts—the one termed plenary, the other summary, from a distinction observed also in the Roman law. Code, 3, 9. In the first, every act in the suit is carried on with great fulness and particularity. The pleadings are on paper, and are drawn with

minuteness and technical accuracy; and it is understood that any deviation from established forms, up to the final contestation of suit, vitiates the whole proceeding. 2 Browne, Civ. & Adm. Law (Ed. 1799) 90; Consett, Ecc. Prax. 22. Summary actions are free from strictness of form. It seems that they may be conducted ore tenus, although a common usage appears to have been to exhibit short statements of the promovent's demand and impugnant's defence, in writing. 2 Browne, Civ. & Adm. Law (Ed. 1799) 90, 136; Cockb. Ecc. Prax. 24; Consett, Ecc. Prax. 178; Wood, Inst. Civ. Law, bk. 4, c. 3, §§ 3, 5. Whether, however, the proceedings in summary causes are oral or written, the like order and rules of pleading are to be observed as in plenary suits. "In omnibus est petendum per procuratores, etc., ut in titulo de contestatione litis in causa plenaria." Clerke, Ecc. Prax. tit. 34. When an issue is to be formed in the nature of the general issue at law, it is called, contesting the cause negatively. 2 Browne, Civ. & Adm. Law, 104. Clerke, in his work, (Ecc. Prax. tit. 31,) describes the course of pleading as follows: "Sed si intendit contestari litem negative, dicendum est in hunc modum. Ego, sub protestatione de nimia generalitate, ineptudine, obscuritate, nullitate, et indebita specificatione dicti libelli, respondendo eidem, dico narrata, prout in eodem libello narrantur, vera non esse, et ideo petita prout petuntur fieri non debere, animo litem contestandi negative. Tunc actor: Libellus est articulatus, et ideo eundem in vim positionum et articulorum repeto, et per denominationem eam sic repeti et admitti peto."

This reaffirmance of the substantive matter of the libel or replication to the answer of the defendant, seems always to have constituted an essential part of the procedure to an issue, whether the court adopted the practice of the civil law, or that of the common law. And, in a formal contestation of suit, when no explicit confession of the libellant's demand was made by the defendant, a replication was deemed necessary to constitute an issue. Code, lib. 3, tit. 9, note i, by Gothofrede. When matters in bar or in avoidance were set up by an exception, the civil law provided replications, duplications and triplications, by means of which the respective parties might avoid or deny new allegations, until the subject matter was reduced to a point asserted upon one side and denied upon the other. These were rather in the nature of special pleadings at common law, than mere re-assertions of prior pleadings. Inst. bk. 4, tit. 14; Vinnius, Comm. ad. id. 856; Heinec. Inst. bk. 4, tit. 13. The pleadings would continue their counteracting allegations until both parties agreed upon some matter of law to be referred to the praetor, or some matter of fact to be submitted to the judex or judices. Heinec. Antiq. lib. 4, tit. 7; Adams, Rom. Antiq.

The canon law transferred to its tribunals the practice of the civil law, and adhered so strictly to its text as to be perplexed with regulations not adapted to the nature and organization of the new courts. And it will be found that many rules, with respect to exceptions, interrogatories, &c., would apply most awkwardly to modern courts as they are now constituted. In the preparation of the cause for proof, however, all seem to have adhered to one course. An issue of law or of fact was formed by a replication to the exception. Consett, Ecc. Prax. 87; Cockb. Ecc. Prax. 24; Gilb. Forum Rom. So. also, in the common law courts, whilst the proceedings were, in effect, ore tenus, the plaintiff narrated his case, the defendant made his defence, and the plaintiff reiterated his own allegations, when they were denied, or repelled those of the defendant, if he brought forward any forming a new point for issue. Cases in illustration of this abound in the year books and other early reports. 2 Hen. IV. 12; 11 Hen. IV. 37; 2 Hen. V. 25; 2 Rich. III. 8. A replication is necessary, in chancery, to put the answer in issue. Gilb. Forum Rom. 113; Eq. Rules Sup. Ct. U. S. 13, 25. And, even to this day, at common law, issue is not complete on filing a plea denying at large the plaintiff's ground of action, but a similiter, in the character of a replication, must be added on the part of the plaintiff.

The concurrent usages of all the courts, with respect to the necessity of a replication, show evidently that it has always been regarded as an indispensable link in the chain of procedure in all properly conducted pleadings, of whatever construction or before whatever forum. There is, in the admiralty practice, by reason of the character and effect of answers, a propriety in requiring a replication, which may not have existed in the civil law. The answer, as a pleading or method of defence, was not known to the civil law, or introduced in the early practice of the ecclesiastical courts. It was drawn compulsorily from the defendant as part of the libellant's proof, (Mitf. Eq. Pl. 190; Cockb. Ecc. Prax. 25,) and might be obtained by calling the defendant into court, and having him there interrogated by the judge to the articles of the libel, or by the defendant's giving his answers in the form of a deposition. Id. The practice of requiring an answer of the defendant, on oath, to every species of libel, seems to have been introduced by the ecclesiastical courts, and not to have prevailed generally in the Roman practice. It arose, probably, from the supposed action upon the conscience of the parties, on which the jurisdiction of those courts was administered. In the civil law, the praetor had, undoubtedly, a right to exact an oath from the defendant as to the truth of his defence. This was, however, considered as a judicial oath, and as the act of the court, to avoid frivolous litigations. Dig. lib. 11, tits. 1, 21. And, in interrogatory actions, the defendant might be required, by the party petitioning,

to answer, in the first instance, on oath. But it is denied, in the notes to the Code, that a party could, of right, impose the general oath on his adversary. Gothofrede, ad. id. loc. Wood, however, supposes that the defendant answered the articles of the libel on oath in all cases. Wood, Inst. Civ. Law, bk. 4, c. 3, § 5. See, also, Gammell v. Skinner [Case No. 5,210]. Browne shows clearly, that in this there is a misapprehension of the doctrine of the civil law, and his views are supported by Gothofrede. Browne, Civ. & Adm. Law, 42–45, note; Dig. lib. 11, tits. 1, 21, note. And, to this practice, proceedings in England conform. Marr. Forms, 363; Consett, Ecc. Prax. p. 3, c. 3, §§ 2, 4. As no oath could be compelled until after contestation of suit, which determined what points were in controversy between the parties, and the oath was then required, not to the whole case, but to the positions or specific interrogatories propounded by the promovent, it might well be that, in the civil law, the answer was hardly regarded in the character of a pleading, and was not, necessarily, followed by a replication. Cockb. Ecc. Prax. 28. The oath of the defendant did not conclude the plaintiff, or militate against him. It does not appear to have been allowed to have the effect of testimony in behalf of the defendant himself, and was called for and employed by the plaintiff alone, in aid of the case he had not other sufficient proof to support. Clerke, Ecc. Prax. tits. 31, 34; Cockb. Ecc. Prax. 25; Consett, Ecc. Prax. p. 3, c. 3, § 2. So, also, the defendant could support his defence by exacting the answer of the plaintiff to positions or interrogatories added to the proceedings after the pleadings were complete and after issue had been formed between the parties. Neither party could demand the oath of his adversary unless he had previously himself sworn to the truth of his own pleading.

From the principles recognised in the civil law, and the early practice of the common law, the course of proceeding which afterwards was established and now prevails in chancery and in the admiralty court in this state, appears to have been moulded—that the libel sets forth the full case of the actor, and is verified by his oath when filed, and that the answer is a full reply to all its important allegations, and is also sworn to by the party putting it in. The admiralty court in this state has always recognised the answer as a competent mode of pleading matters ordinarily stated by way of exception or special plea. Colonial Court MSS. 1727, 1758. Having adopted that course of procedure in regard to the structure and manner of interposing the answer, and its effect, the courts of admiralty would, by parity of reasoning, pursue the same course of pleadings to the completion of the issue. In chancery, since the pleadings have taken the shape of a case asserted under oath on one side by bill, and denied or evaded on the other by answer, it has been held, as a fundamental principle, that the an-swer should be regarded by the court as entirely true, unless a replication is filed to it, and it stands contradicted by full proof. Peirce v. West's Ex'r [Case No. 10,909]; Gilb. Forum Rom. 45. This proceeds upon the ground that the plaintiff, having referred to the defendant for the verification of his charge, can only displace his evidence by full proof. Inst. bk. 4, tit. 13; Dig. bk. 44, tit. 1. By bringing a case to hearing upon the pleadings alone, the plaintiff, in judgment of law, admits every fact asserted in the answer. It is also equally well settled, that the plaintiff cannot go into proof against the answer without having taken issue upon it by a general replication. Brinckerhoff v. Brown, 7 Johns. Ch. 217; 1 Moult. Ch. Prac. 277, 299. The obvious reason of this rule is, that the defendant cannot know that his answer is controverted, and be prepared to sustain it, unless a formal issue is taken upon it. Nor even then is a party permitted, in some of our highest courts, to go into evidence without due notice to the defendant that he intends taking proofs. Eq. Rules Cir. Ct. U. S. S. D. N. Y. 73, 75, adopted January 15th, 1833. The fundamental principles of chancery practice are referred to in elucidation of those appertaining to the procedure of admiralty courts, because, originally, equity took its rules, both of decision and of action, from the civil law, and the usages in chancery supply strong evidence of the true import and spirit of those principles.

The only authorities which seem to hold that, by the civil law, a replication to an answer is an unnecessary pleading, are Wood and the Code of Practice of Louisiana. Wood is not minute or explicit in his statement of this point, and his observations ought, perhaps, to be limited to exceptions or formal pleas, and not to embrace answers as used in the civil law. He says that, with the answer, the defendant may give in his allegations to the plaintiff's libel, and that, after this, both parties prepare to produce their proof. Wood, Inst. Civ. Law, bk. 4, c. 3, § 6. From the manner in which he has represented the proceedings, it may be implied that he considered no allegation necessary on the part of the plaintiff after the defendant had put in his answer, unless new positions or interrogatories were interposed. The original shape of the libel and answer ought probably to be considered in connection with this statement of Wood. The sworn answer was, in effect, no part of the pleadings, but a portion of the evidence which the promovent presented with his proofs, and it was to be placed with and to be considered as his testimony. There might be, accordingly, no occasion or propriety in putting him to reply formally to the answer so brought in.

Article 357 of the Louisiana Code of Practice, is, "The cause is at issue when the defendant has answered, either by confessing or by denying the facts set forth in the petition, or by pleading such dilatory or peremptory

exceptions as he is bound to plead in limine litis, pursuant to the provisions of this Code." Considering the petition. In that state, as equivalent to the libel in admiralty proceedings, this Code would furnish a highly respectable and enlightened exposition of what should be deemed the true spirit of the practice according to the civil law, if it were not obvious that it is more particularly modelled upon the system of French jurisprudence, than drawn directly from the civil law. Its provisions throughout conform almost in letter to the rules collected in Pothier's different treatises, or to the modifications introduced by the Code Napoleon. In relation to this point, it is manifest that both Pothier and the French Code contemplate a replication as an essential part of the pleadings to constitute an issue. "Le demandeur à qui le défendeur a signifié des défenses contre le demande par lui donnée, peut répliquer à ses défenses par un acte signifié au procureur du défendeur, mais il le doit faire en trois jours. Ces répliques, ainsi que les défenses, se fournissent par un acte signifié de procureur à procureur." Pothier, Traité de la Proc. Civ., c. 2, § 7, art. 1; Code Nap. de Proc. Civ. liv. 2, tit. 6, arts. 97, 98. "Dans les affaires qui s'intruisent par écrit, la cause sera en état quand l'instruction sera complète, ou quand les délais pour les productions et réponses seront expirés." Code Nap. de Proc. Civ. liv. 2, tit. 17, art. 343. It may be thus implied, that the Louisiana Code introduced a new rule for determining when a case shall be at issue, and is not to be regarded as an exposition of the French rule, and, through that, of the principle and mode of proceeding in the civil law.

It thus appearing, that in all courts of this class, and at nearly all periods, a replication has been deemed an essential part of the pleadings, and that there is no rule of this court dispensing with it, but that, on the contrary, the usage has been to exact it, I consider, that by noticing the cause for hearing without filing a replication, the libellant must be held to admit the truth of the answer, and cannot go into proof in opposition to it. This is a technical point of practice, touching formalities in a suit, and not the essential merits of the cause; and, to avoid all perplexity or surprise hereafter, I have directed a rule to be entered regulating proceedings in this particular. The object of the replication not being to advance any new allegation, or present an issue varying in any particular from that formed by the libel and answer, but in effect to operate as notice to the respondent or claimant that his answer will not be admitted as true, I

shall leave it optional, in this case, with the libellant, either to file a general replication, or to give notice, in writing, that proofs will be offered at the hearing in opposition to the answer.

The libellant having declined going to hearing upon the pleadings alone, it is not necessary for the court to enter any special order in respect to these proceedings, and it will, accordingly, confine itself to announcing, what would be the correct course of practice.

The question having arisen incidentally, without any specific motion on the part of the claimants, no costs are allowed.

NOTE. In Dunlap's Admiralty Practice, (page 198,) it is said: "A replication, even as a matter of form, is seldom filed. It has not been the practice in the district court of Massachusetts, to file the general replication to the answer." It seems, however, that in that district "answers are not required to be on oath, unless at the instance of the plaintiff." Id. p. 298. Benedict, in his Admiralty Practice (section 367), says "The libellant, if he desires to dispute the answer, files a general denial, called a replication, and the cause is at issue." "To the answer of the defendant, if the libellant does not admit its statements, he replies by a replication." Id. § 481. Judge Betts, in his Admiralty Practice, (page 50,) says: "Replications need not be filed to answers without oath, taking issues in fact to the allegations of the libel. The respondent will be required, and the libellant will be permitted, each to give testimony in support of their respective allegations, the issue being complete without any replication being filed. but the allegations of a sworn answer, responsive to the charges of the libel, will be deemed admitted by the libellant, unless, within four days from the time the answer is perfected, or from the time allowed to except thereto, he files a replication or serves on the respondent's proctor a written notice that, on the trial, proofs will be offered in opposition to the allegations of the answer. Such notice, when given, supersedes the necessity of a replication." The 88th rule of the district court for the Southern district of New York, is as follows: "The matter set up by a sworn answer, responsive to the allegations or interrogatories of the libel, shall be deemed admitted on the part of the libellant, unless, within four days from the time the answer is perfected, or from the expiration of the time allowed for excepting thereto. replication is filed, or a written notice served on the proctor of the respondent, that on the trial of the cause proof will be offered, on the part of the libellant, in opposition to the allegations of the answer. No replication need be filed for any other purpose, to an answer taking an issue in fact upon the allegations of the libel." See, also, rule 27 of the Rules in Admiralty prescribed by the supreme court of the United States.